Abraham J. Multer, J.
This action was originally brought by plaintiff husband for divorce. Defendant wife answered and counterclaimed for a divorce and for support for herself and a child, neither an issue of the marriage nor the natural or adopted child of either party. On the trial the husband withdrew his complaint and amended his reply to the counterclaim so as not to contest the wife’s right to a divorce, but did continue to put in issue the wife’s right to support for herself, his obligation to support the infant, and the matter of the amount of counsel fees to be awarded to the wife’s attorney.
Without objection, on the trial, he was permitted to amend his reply to assert an affirmative defense of the six-year Statute of Limitations against the claim of support for the child.
At the conclusion of the trial, the court awarded the wife a divorce but reserved decision on the questions of support and counsel fee. Subsequently, and on the court’s own motion, an order was entered appointing Maurice I. Eappaport, Esq., the guardian ad litem of the child, because of the apparent conflict of interest between the husband and wife. The guardian rendered very lawyer-like and commendable services on behalf of the infant. His report has been served and filed. At his suggestion, the trial was reopened and additional proof adduced which is determinative of the rights of the child.
The attorneys for the parties and the guardian ad litem agree, and the court’s own research indicates, that this is a case of first impression as to the question of the obligation to support a child by one, neither its natural nor foster parent.
The parties were married in January, 1952 and lived together as man and wife until 1959. There was no issue of the marriage despite the desire of both parties to have children. It was agreed that no good purpose would be served by the court taking proof as to the reasons therefor, which accounts for the absence from this record of any proof on that subject.
In 1958 the parties decided to adopt a child. In October, 1958 they were advised ;of the possibility of acquiring such a child in *959 Florida, and the wife then went to Florida for that purpose. The husband bought the round-trip transportation tickets, escorted his wife to the airport in New York and communicated with her by telephone about the child while she was in Florida. When the child was born, the mother made arrangements at the hospital to take the child to Brooklyn where the parties had resided. Shortly after the child’s birth, in November, 1958 the wife did bring the child with her to New York. The husband together with Ms mother met his wife and the child at the airport and escorted them to the apartment where the husband and wife had theretofore lived together. Upon arrival at their home, the wife found a bassinet, diapers and baby bottles. The baby continued to reside there with the husband and wife until they separated.
The wife says that she and her husband had agreed to adopt the child, and the court believes that testimony. The husband now denies that he ever made such an agreement and insists that he never wanted the child and does not know how the baby articles got into his apartment. The court does not believe the husband. Neither of the parties has ever adopted this child. The identity and present whereabouts of the natural parents of this child are unknown.
Ordinarily the court would not be interested in the religious affiliations, or lack thereof, of litigants. In this case, however, that has an important bearing upon the outcome. The parties are of the Jewish faith. The husband was born into an orthodox home and became a 6 8 bar mitzvah. ’ ’ The marriage of the parties to this action was consummated in accordance with orthodox Jewish tradition, the ceremony being performed by an orthodox rabbi. The child’s guardian ad litem caused to be produced at the trial, and there was received in evidence, the “ Ketuba ”, the traditional marriage contract, which is written both in Hebrew and Aramaic, and in English. It is signed by the parties as bridegroom and bride as well as by the rabbi who performed the marriage and by two witnesses. It provides that they were ‘1 betrothed according to the Laws of Moses and Israel ”, and that the husband took upon himself all those obligations “ as are prescribed by our religious statutes.” Under the circumstances prevailing in this case, the agreement by the husband and wife to adopt the child, even without any formal adoption and in the absence of the natural parents, as between the parties and this child, requires that the court find that both parties must support the child. Assuming arguendo only, however, that there was no such agreement to adopt the child, the marriage contract creates that obligation on the husband’s part. *960 (See Jewish Marriage Contract, by L. Epstein, pp. 5 and 171.)
Under the Laws and Moses and Israel, the head of every household who takes a child into his household puts himself in loco parentis and is as liable for the support of such infant as though it were his own. Although Orthodox, Conservative and Reform Judaism may differ in some respects, this is one of- the many instances where there is no disagreement and all agree upon the foregoing statement.
No legal precedent has been found in Anglo-Saxon jurisprudence, in the Napoleonic Code or in the Code of Justinian. Wig-more’s ” Panorama of Worlds Legal Systems ” indicates that the Chinese Law on the subject is the same as the Jewish law.
The Jewish law traces its foundation for this principle to the Old Testament. The first reference on the subject is found in the Book of Ruth (IV :17) where we are told that Ruth bore a son and that Naomi brought him up and he was called after her name and forever after he was known as Naomi’s son. In the Jerusalem, also known as the Palestinian, Talmud (Sanhedrin, p. 19), we find the principle enunciated as: Whoever brings up an orphan in his home, scripture ascribes it to him as though he had begotten the child. In Psalms (LXXVTI:16) we find reference to the fact that the sons of Jacob were sustained by Joseph and therefore they were called after his name, that is Joseph’s, and were thereafter known as the sons of Jacob and Joseph.
In the <£ Spirit of Jewish Law ” written by George Horowitz, a New York lawyer well schooled in Jewish law, we find the principle enunciated as: “ There seems to be no public institution in the Jewish community for foundlings. The usual practice was for some family to take the child in and bring it up as a member of the household. There was nothing in Jewish law like £ adoption proceedings ’. After being declared a foundling, the child was to be presumed to be the offspring of lawful marriage.” Maimonides (M. T. Inheritance 11:14) wrote on the subject, “ Even if a child is a pagan, he is a member of the family with the rights and duties pertaining to such membership.” The Book of Leviticus, 19:34, sums it up as follows: i£ A stranger that sojourneth with you shall be as the home-born among you and thou shalt love him as thyself. ’ ’
Even when the husband does not know of the wife’s actions, he is responsible for them and what the wife does she does for the husband as well as for herself.
See the Law of Obligations by Dr. Isaac Herzog (vol. II, p. 155).
*961 This case is much stronger because the husband not only knew but agreed to what his wife did.
As long as this husband and wife were living together with the child in their household, the husband performed the obligation he assumed, to support the child. Now that they are no longer living together, he seeks to- avoid his obligation. The strongest proof that he did assume this obligation is the fact that shortly after the arrival of the child into his household, in accordance with Jewish tradition, he went to the local synagogue where he named the child after his maternal grandfather. He claimed the child as a dependent on his income tax return.
Since he had nothing to do with registering the child in the schools she attended, he is not responsible for his name appearing on their records as the child’s father.
It is of some significance however, that he never protested to such schools that he was not the child’s father.
This court finds as a fact that the wife went to Florida with the full knowledge and consent of the husband for the purpose of adopting this child. In going there she was acting for him and for herself. She continued to act for both of them in bringing the child from Florida to New York. When he received them into his home in New York, and supplied the child with the necessities of life, that is, food, clothing and shelter, in Ms home, and acknowledged the child as his “ darling daughter ” and called himself her father, he fully ratified and confirmed and adopted as his own acts everything his wife had done for and with the cMld. That conduct certainly confirms the wife’s testimony as to what he and she had agreed upon before she left for Florida to get the child. The lapse of several years during wMch he failed to fulfill his obligations as a “ father ”, does not relieve him of that obligation to support her until she reaches her majority or is emancipated, whichever occurs first.
Reference has been made to the Torah (the Pentateuch) and the Talmud. Similarly, commentary is found in the Midrash Rabbah (Exodus 46:5) to the effect that he who raises a child is called the father, not the one who begot it. Also that if a note is presented in wMch a man refers to himself and Ms cMld, the cMld is considered as his even though not his natural child. (See, also, Meir of Rothenburg-Responsa, 242; and Shulchan Aruch [Choshen Mishpot] — 42:15.)
The duty of a father to support his minor children seems to have been first recorded in the Talmud in the decree of the Council of Usha (b. ket. 49b). It is codified in the Shulchan Aruch, Even Hoezer 71. See, also, Reform Responsa by Rabbi Solomon Freehof (vol. I, p. 220 et seq.).
*962 In this ease, all the facts point in the same direction. The husband authorized the wife to bring this child into the household. He received it as his child. He called it his child. He named it his child. He addressed it, and wrote about it, as his child.
Ancient law, the Roman, the Athenian, the Spartan, all recognized adoption. It is mentioned in the New Testament (Romans VIII :15, IX :4) as well as the Old Testament. Counterparts of the law of adoption are found in the German, Spanish and French law. In this country adoption depends upon statute. It was not until 1873 that the first such law was enacted in New York State. In Florida until recent years adoption was accomplished simply by the natural parent relinquishing the child’s custody and control to another adult who assumed the same.
We are not here dealing with an adoption but rather with the rights, if any, that flow from a failure to comply with a contractual obligation, express or implied. Liability for the breach of such an agreement to adopt has been imposed by our courts on the estates of decedents in favor of the children who are not adopted.
That such liability in a proper case might be imposed is expressly recognized in Forman v. Forman (17 N Y 2d 274, 280). Incidentally, that case and a host of others are ample answers to the husband’s objections to this court’s appointment of a guardian ad litem for the infant.
Both the parties to this action are legally responsible for the support of this child. The primary responsibility is that of the husband.
Support for the conclusion reached in this case is found in the case of Anonymous v. Anonymous (41 Misc 2d 886) where the husband consented to his wife’s artificial insemination. Even though the court found the resulting child was not the natural child of the husband, he was required to support it.
The defense of Statute of Limitations is dismissed as without merit. That defense might apply if someone were trying to compel the husband to pay for the support of the child for the period beginning more than six years before the commencement of an action or as here the assertion of the counterclaim. The wife here is only asking for support of the child from that date. The husband’s obligation was a continuing one. His breach thereof was and is a continuing one. There must be an obligation on the part of someone to support au infant taken (even though with consent) from its mother, when but a few days old and taken for the express purpose of adoption and never returned and now not returnable to its natural parent.
*963 This is the typical case where lack of legal precedent will not cause the court to fail to forge just and equitable relief.
Although not pleaded as a defense, the husband urges that a determination of the Family Court is res judicata. The case of Loomis v. Loomis (288 N. Y. 222) determined that question adversely to the husband. (See, also, Matter of Melis, 260 App. Div. 772, 775.)
The husband’s argument or res judicata is based on a proceeding for support started in the Circuit Court of Dade County, Florida, and on a proceeding resulting therefrom in our Family Court Division of the Domestic Relations Court of the City of New York. The records in the Family Court are in evidence and include that part of the Florida court record forwarded to our Family Court. .
In the Florida court, although the child is mentioned in the petition, the petitioner wife asked for support only for herself. In paragraph 4 of that petition she alleged the failure and neglect of the husband to support her. Physically stricken from the printed portion of that paragraph of the petition are the words “and other dependents” and the “ Wherefore ” clause recites: “ Petitioner prays for such an order for support directed to said Respondent ” (the husband).
We need not speculate why no support for the child was asked for in that proceeding. Nor need we examine the Florida law to determine whether the wife had a right to ask for that relief there, and that therefore an adjudication in the Florida court bars a. subsequent action for such relief as could have been originally obtained. The Florida court not only did not make any determination of the matter, but on October 24, 1960 it refused to make an order because it was: ‘ ‘ without jurisdiction to enter any order that would be binding on the respondent (the husband) in the absence of service upon the respondent. It is a matter to be determined by the court of the Asylum State; that is, where the husband is located.”
On August 18, 1960 there was a hearing in the Family Court, Kings County of the Domestic Relations Court of the City of New York in the proceeding instituted in that court on the basis of the afore-mentioned proceeding in the Florida court. Petitioner wife was not present. An Assistant Corporation Counsel appeared. Respondent husband and his laywer were present. After the respondent was sworn, the court made inquiry about the child. The Assistant Corporation Counsel answered: “ The application is for wife only. Adoption has never gone through.” Whereupon the court stated: “All right. No order. ’ ’ A proposed form of order directing respond *964 ent to pay for support is in the file, incomplete and unsigned. There is no order in the file either of dismissal or otherwise disposing of or terminating the proceeding.
Notice of the foregoing was given to the Florida court, together with a copy of the minutes of the proceedings before Postel, J.
On October 24, 1960 the Florida court conducted a hearing at which the petitioner appeared. That testimony and the Florida court’s determination were forwarded to the Family Court in Kings County.
Respondent husband and his lawyer appeared again in our Family Court on January 6, 1961 pursuant to a summons issued to him by our Family Court.
No transcript of the proceedings in the Family Court on January 6, 1961 is in that court’s record which is in evidence here, and none has been supplied to this court.
There is an indorsement on the Family Court papers reading: “ No order of support is made at this time. Judge Pagnucco, Fla., notified ’ ’. On the Form F-161-091549 in our Family Court under the printed words: “ Final Disposition” there appears a place for a notation by the presiding Justice together with a place for his signature and a date. All of that has been left blank, and indorsed on the same form under the heading “ Orders and Adjournments ” there appear over a Judge’s initials the words “ No order of support is made at this time.” Whether the court had a right to determine an issue not presented is unimportant because in order to sustain a plea of res judicata, in addition to any decision there must he an order, decree or judgment. There is none in the Family Court proceeding. In view of the court’s decision “No order is made at this time ”, this court must find that the proceeding was left pending undetermined. Whether it may be deemed discontinued, withdrawn or even dismissed because of lapse of time is unimportant. It is now too well settled that the same rights of appeal apply in the Family Court as in other courts of our State. Before there can be such an appeal, an order or judgment must be entered. There was and is no binding order, decree or judgment that may be pleaded as a bar to the wife’s present request in this court for support for the child. Furthermore, the child is now represented in this court by a guardian ad litem. Any plea in bar that could be asserted against the wife or against any independent cause of action in her own right cannot be so asserted against the infant.
The court accordingly directs judgment in favor of the defendant wife against the plaintiff husband, granting her a divorce. *965 Considering the financial condition of the parties, their earning capacity, their earnings and their needs, and the needs of the infant, the court fixes alimony for support of the wife at $15 per week commencing with the 4th day of October, 1968, the day of the trial herein, and of $35 per week for the support of the child, Helene, commencing with the 11th day of March, 1968, the date of the service of the answer herein containing the counterclaim, and the sum of $500 to be paid by the plaintiff husband to Maurice I. Rappaport, Esq., as and for his fees herein as guardian ad litem of the infant, Helene, and $750 to the attorney for the defendant wife as and for his counsel fees and disbursements herein.