MURRAY WENER, Appellant-Respondent, v. ELAINE WENER, Respondent-Appellant.

Second Department, July 13, 1970.

*Halper, Passick & Prince* (*Richard M. Gottlieb* and *Wallace Prince* of counsel), for appellant-respondent.

*Ritter & Ritter* (*Alfred Ritter* of counsel), for respondent-appellant.

*Maurice I. Rappaport,* guardian ad litem in person.

CHRIST, P. J. The question posed by this appeal is whether a husband may be required to support a child whom he has neither fathered nor adopted. It is a question of first impression upon the facts presented.

The parties were married in 1952 and lived together as man and wife until December, 1959. There is no issue of the marriage. In October, 1958 the defendant wife went to Florida and obtained a newly-born, female infant for purposes of adoption. She claims she acquired the infant with the knowledge and consent of the plaintiff husband and that they had previously agreed to adopt the child. The plaintiff denies he agreed to adoption or that he ever wanted the child in his home.

The defendant and the child returned to New York in November, 1958. They resided together with the plaintiff in the marital abode for the next 13 months. The parties separated in December, 1959, the defendant taking the child to the home of her (the defendant's) parents in Florida. In the latter part of 1967, the plaintiff instituted this action, seeking a divorce on the ground of abandonment. The defendant counterclaimed for divorce upon the same ground and sought support for herself and the child. Thereafter, the plaintiff withdrew his complaint and chose not to contest his wife's right to a divorce.

The trial court granted the defendant's prayer for divorce and held, *inter alia,* that the plaintiff was liable for the child's support. It believed the defendant's testimony and found, as a

matter of fact, that the parties had previously agreed to adopt the child and that the plaintiff had impliedly agreed to support her (*Wener* v. *Wener,* 59 Misc 2d 957).

The trial court's factual finding is amply supported by the proof. There was credible evidence that the parties desired a child. They had no issue. In October, 1958 the defendant was apprised that a child, whose birth was then imminent, would become available for adoption in Florida. The plaintiff made arrangements for his wife to go to Florida and bring the infant back to New York. He picked them up at the airport upon their return and drove them back to the parties' apartment, where a bassinet, bottles and diapers were waiting. Subsequently, the plaintiff went to a nearby synagogue and named the child in accordance with Jewish tradition.

The plaintiff supported the child until December, 1959 and claimed her as a dependent, under the category of " children ", on his 1958 Federal income tax return. After the parties' separation, the plaintiff wrote his wife a letter in which he stated he loved the child dearly. He also sent the child an Easter card in April, 1960 which was signed, " Love Dad ". Nevertheless, he did not send the defendant any moneys for support and the child was not formally adopted. On this evidence, the trial court was justified in finding an agreement to adopt.

The plaintiff argues, however, that neither statute nor case law permits imposition of liability for child support on the basis of a mere agreement to adopt. Admittedly, our statutes do not list one in the plaintiff's position among those specifically declared liable for the support of dependents. The legislative scheme contemplates that there always exists either a natural or adoptive parent to whom we might look for support (see Domestic Relations Law, § 31, subd. 3; § 32, subd. 2; § 109, subd. 1; § 117; Family Ct. Act, § 413). Here, the child's natural parents are unknown and there has been no legal adoption.

Existing case law on formal agreements to adopt is similarly inapposite. It has been held that a child may inherit from the estate of a deceased " foster " parent where a contract of adoption between the child's natural and " foster " parents had been fully performed except for commencement of actual adoption proceedings (see, e.g., *Middleworth* v. *Ordway,* 191 N. Y. 404). However, no court has had occasion to consider whether a child may compel support from a living " foster " parent in such a case if its natural parent is deceased. One court has specifically held that an agreement to adopt does not operate to terminate the natural parent's duty of support but there the natural parent

was alive and capable of providing for the child (*Matter of "Smith" v. "Jones"*, 43 Misc 2d 350).

We cannot ignore the realities of this infant's plight and blindly apply a rule which was never meant to encompass her situation. This infant was taken from her natural mother when but a few days old, albeit with her mother's consent. Her natural parents and their whereabouts are unknown (no one has ever suggested she be returned to them) and she has never been legally adopted. Still, the parties at bar are the only "parents" she has ever known. Having brought the child into their home, they must, of necessity, shoulder the burden of her support.

However, as between the parties themselves, the primary liability for support properly rests upon the plaintiff. Having agreed to adopt the child and support her, and having treated her as his own prior to the parties' separation, the plaintiff may not now disavow all obligation and shift the entire burden onto the defendant. It may be reasonably inferred from the evidence that the defendant would not have acquired the child and brought her into their home in the absence of the plaintiff's consent to adoption. Therefore, the plaintiff's primary obligation rests upon the dual foundation of an implied contract to support the child and equitable estoppel.

The implied promise-equitable estoppel approach has been followed by New York courts in fixing responsibility for support of a child conceived by means of artificial insemination by a third-party donor. In *Gursky* v. *Gursky* (39 Misc 2d 1083), for example, a husband sought to disclaim all obligation toward a child so conceived on the theory that it was not his legitimate issue. The trial court agreed that the child was technically born out-of-wedlock but held that the husband was nevertheless liable for the child's support. The husband's conduct, together with his written consent to his wife's insemination, was found to have given rise to an implied promise to support any offspring that might result. Furthermore, the wife's submission to the procedure in reliance upon her husband's express wishes was found to require invocation of the doctrine of equitable estoppel so as to place the primary burden of support upon the husband. (See, also, *Anonymous* v. *Anonymous,* 41 Misc 2d 886.) To the extent that the facts in *Gursky* (*supra*) similarly precluded resort to a "natural" or "adoptive" father for support, that case is most closely analogous to our own. Its reasoning is sound and doubtless applicable upon the facts at bar.

Although the trial court correctly held the plaintiff liable for the child's support, its reliance upon Jewish law as an alterna-

tive ground of decision was erroneous. The court looked to Jewish law only when it assumed, *arguendo*, that the plaintiff had never agreed to adopt the child (*Wener* v. *Wener*, 59 Misc 2d 957, 959, *supra*). Its choice of such law was dictated by the fact that the parties were Jewish and had entered into a "ketuba", or Jewish marriage contract. However, New York cannot apply one law to its Jewish residents and another law to all others. If our law does not require a husband to support a child whom he has never agreed to adopt, the court cannot refuse to apply such law because the tenets of the parties' religion dictate otherwise. Application of religious law would raise grave constitutional problems of equal protection and separation of church and State (see 15 N. Y. Law Forum 973; 4 Israel L. Rev. 578).

We have examined other claims raised by the parties with respect to the procedural and financial aspects of this litigation and find them to be without merit.

The judgment below should be affirmed, with costs to the defendant.

RABIN, HOPKINS, BRENNAN and BENJAMIN, JJ., concur.

Judgment affirmed, with costs to the defendant.