JOHN W. S. (ANONYMOUS), Respondent, v JEANNE F. S. (ANONYMOUS), Appellant.

Second Department, May 12, 1975

---

*Herman Yellon* for appellant.

*Michael M. Perlman* for respondent.

HOPKINS, Acting P. J. The plaintiff brought this action for divorce based upon the cruel and inhuman treatment of him by the defendant.[1] The defendant interposed a counterclaim for divorce based upon the cruel and inhuman treatment of her by the plaintiff. After a trial, the Special Term found both parties to be at fault and granted a divorce to each. Only the defendant appeals, claiming, among other things, that the evidence was insufficient to constitute grounds for a divorce in favor of the plaintiff, and that, in any event, a dual divorce is unauthorized in law. Moreover, the defendant contends that,

---

1. The complaint also contained causes of action for the conversion of a tax refund by the defendant, for an accounting of rents received by the defendant and for conversion of rents received by the defendant.

despite the dual divorce, she is entitled to alimony and child support. We affirm the judgment. The evidence was sufficient to support a divorce in favor of both parties and the defendant is not entitled to either alimony or child support.

We approach this case with the view and in the spirit of the guidelines declared by Chief Judge BREITEL in *Hessen v Hessen* (33 NY2d 406, 411) to the effect that the courts should exercise a broad discretion in balancing the factors in each case in which a divorce is sought for cruel and inhuman behavior, dependent on the circumstances involving the financial status of the parties, their age, health and station in life, the duration and nature of the marriage and their conduct toward one another.

Here the parties met in January, 1972 and were married on August 5, 1972. The plaintiff had not been previously married; the defendant had been married before and had custody of the two children born of that marriage. The plaintiff was employed as an investigator by a county board of health; the defendant was receiving public assistance. The marriage seemingly had a short and turbulent history; this action was begun on March 23, 1973.

It is unnecessary to review at length the events and the course of conduct which occurred during the marriage upon which the parties predicate their respective grounds of action. It is enough to say that Mr. Justice VELSOR at Special Term found, on substantial evidence, that both the plaintiff and defendant were guilty of misbehavior beyond the bounds of mere incompatibility.[2] Nor is it useful to attempt to ascertain whose conduct precipitated the destruction of the marriage; the state of the evidence displays a condition of mounting irritation and aggressiveness between the parties, contributed to by the acts and attitudes of each of them. In short, Mr. Justice VELSOR was warranted in determining that each party was entitled to a judgment of divorce on the findings of cruel and inhuman treatment of the one against the other.

In concluding that Mr. Justice VELSOR was correct in his findings on the evidence, we have been guided by the factors mentioned in *Hessen.* The brief duration of the marriage, the

2. The court found that the plaintiff had struck the defendant, had made deviate sexual demands on her and had boasted of sexual activity with another woman; it found that the defendant had threatened the plaintiff with a knife, had neglected to care properly for the household and was quarrelsome and used bad language constantly.

relative stations of the parties before the marriage and after its acrimonious ending, the unfortunate attitudes exhibited by the parties toward one another and their differing aspirations and demands persuade us that the marriage is unworkable and should be brought to legal termination. Indeed, the record evinces a marriage foredoomed to failure nearly at the start. There is little to save in a marriage when nothing has grown out of it.

We see nothing in the statute which forbids, in circumstances such as these, the court from granting a dual divorce (Domestic Relations Law, § 170). Certainly, the statute contains no express prohibition against that form of judgment. The Legislature has seen fit to continue fault as a reason for the dissolution of marriage in certain of the statutory bases, i.e., abandonment, cruelty and adultery. Undoubtedly, the relations between the parties to a marriage depend on constantly shifting responses to the actions and postures of the one toward the other, and it is not easy, after the event, to sort out precisely the causes of, or the party answerable for, the ultimate breakdown of the marriage.

The defendant argues that a dual divorce cannot be granted since a finding of fault on the part of the plaintiff contradicts a finding of fault by her. We fail to follow the logic of the argument; the innocence of one party is not a concomitant of the fault of the other, just as in tort law, the negligence of the defendant does not preclude the contributory negligence of the plaintiff.

Accordingly we affirm the judgment granting a divorce to each party.[3] The question remains whether the Special Term correctly decided that the defendant was not thereby entitled to alimony. The courts in other jurisdictions divide on the question. Of course, statutory authority differs within the States, but there is a difference of philosophy as well. On the one hand, in the view of certain courts, a finding of fault by the wife in itself prevents her from receiving an award of alimony, even though the husband too was at fault (e.g., *Mason. v Mason,* 276 Ala 265; *Hinton v Hinton,* 254 Miss 50; *Childs v Childs,* 223 Ga 435; *Logan v Logan,* 396 P2d 198 [Wyo]). Other courts do not enforce an absolute bar against the wife, but relate the issue to the circumstances—the dura-

---

**3.** One other case in New York. appears to have arrived at the same result, albeit without appellate review *(Jay v Jay,* 67 Misc 2d 371; cf. *Woicik v Woicik,* 66 Misc 2d 357). For cases in other States, see Ann. 13 ALR 3d 1364.

tion of the marriage, the needs and income of the parties and the contribution of the wife in the past to the material success of the parties (e.g., *De Burgh v De Burgh,* 39 Cal 2d 858; *Gilmore v Gilmore,* 45 Cal 2d 142; *Burch v Burch,* 195 F2d 799; *Shearer v Shearer,* 356 F2d 391, cert den 384 US 940; *Burns v Burns,* 145 Mont 1; *Flagg v Flagg,* 192 Wash 679; *Simmons v Simmons,* 122 Fla 325; *Quinn v Quinn,* 118 NJ Super 413; see, generally, Ann 34 ALR 2d 313).[4]

In New York the statute expressly states that the court may direct the payment of alimony to the wife, even though an action by her is dismissed because of her misconduct, "unless such misconduct would itself constitute grounds for separation or divorce" (Domestic Relations Law, § 236). The statute does not directly reach the issue here because the defendant's action was not dismissed because of her misconduct; indeed, her action succeeded. Nevertheless, the court found misconduct on the defendant's part, so much so that it granted concurrent relief to the plaintiff on the basis of such misconduct. Although the language of the statute does not clearly encompass a dual divorce, we think that the intent of the statute was to deny alimony to a wife against whom the husband has obtained a divorce because of her misconduct. "Under section 236 of the Domestic Relations Law, a divorce granted on the basis of the wife's 'misconduct' will deprive the wife of both her rights to alimony and the exclusive occupation of the marital residence" *(Hessen v Hessen,* 33 NY2d 406, 410, *supra;* see, also, *Math v Math,* 39 AD2d 583, affd 31 NY2d 693; *Vranick v Vranick,* 41 AD2d 663; *Kall v Kall,* 35 AD2d 943; *Frank v Frank,* 26 AD2d 837; *Sacks v Sacks,* 26 AD2d 575, mot for lv to app den 18 NY2d 583).

However, even were we to construe the statute differently and apply a rule in cases in which dual divorces were granted which allowed an award of alimony to an erring wife, dependent on the circumstances of the marriage, we would not exercise that discretion here. As the teaching of *Hessen* indicates, the court, in determining the case in the light of fault by the wife, takes into account the provisions of section 236 of the Domestic Relations Law, as well as the other factors inherent in the marriage. The brevity of this marriage, the relative positions of the parties prior to the marriage and

---

4. Kentucky appears to follow somewhat the same rule under the doctrine of comparative rectitude (cf. *Gnadinger v Gnadinger,* 309 Ky 660; *Rigsby v Rigsby,* 266 Ky 291).

presently and the claims of both parties that the marriage is dead because of the other's conduct are all reasons for the denial of alimony to the defendant. To put it differently, the defendant's position was little changed during the short time the parties were married.

One subsidiary point raised by the defendant deserves discussion. Of course, the children of the previous marriage of the defendant are not entitled by law to support by the plaintiff. The defendant contends, however, that the plaintiff had agreed to adopt the children, and, hence, that under *Wener v Wener* (35 AD2d 50), he is chargeable with their support. We do not read *Wener* as does the defendant. In *Wener,* the marriage lasted for some seven years; there were no children of the marriage and no children of either party by previous marriages. The court found that the parties had agreed to adopt a newly born infant brought into their home who had lived with them for over a year. On those facts we held that the husband could not "disavow all obligation and shift the entire burden onto the [wife]" (p 53).

The imposition of support through the implied promise-equitable estoppel theory of *Wener* finds no counterpart here. Although the record contains evidence which shows that the plaintiff had once promised to adopt the children, we would scarcely apply a strict contractual obligation in the atmosphere surrounding the beginning and ending of matrimony. What is said during courtship and the happy moments of a short-lived marriage has little relevance when the marriage is destroyed by the mutual actions of the parties. There is nothing in this record to establish an equitable estoppel against the plaintiff so as to charge him with the support of children born out of another marriage of the defendant.

There are other questions in the case raised by the defendant concerning counsel fees, the marital home and an accounting of a tax refund. We are satisfied that the Special Term made appropriate directions in the judgment with respect to these matters and see no grounds upon which to change its provisions.

Accordingly, the judgment should be affirmed insofar as it is appealed from.

MARTUSCELLO, LATHAM, COHALAN and BRENNAN, JJ., concur.

Judgment of the Supreme Court, Nassau County, entered

March 13, 1974, affirmed insofar as appealed from, without costs.