H.M. v E.T. (2007 NY Slip Op 51711(U))

[*1]

H.M. v E.T.

2007 NY Slip Op 51711(U) [16 Misc 3d 1136(A)]

Decided on September 11, 2007

Family Court, Rockland County

Warren, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 11, 2007

Family Court, Rockland County
H.M., Petitioner,
against
E.T., Respondent.
U-110-07

ROBYN S. CROSSON, ESQ.
PROSKAUER ROSE LLP
Attorneys for Petitioner
1585 Broadway
New York, New York 10036
CAROLYN J. PRZYBYLO, ESQ.
DEWBURY & MONOPOLI, P.C.
Attorneys for Respondent
328 North Broadway
Upper Nyack, New York 10960

William P. Warren, J.
The court has before it the petitioner's objections to the order of Support Magistrate Rachelle C. Kaufman, dated March 7, 2007, dismissing the petition filed herein.
Upon review of the petition filed January 5, 2007, the order of dismissal, the audio recording of the proceedings conducted before the Support Magistrate, the petitioner's objections and the respondent's rebuttal thereto, it is
ORDERED, that the objections be and the same are hereby granted and; it is further
ORDERED, that the order of dismissal dated March 7, 2007 is reversed.
Pursuant to the Uniform Interstate Family Support Act (Family Court Act Article 5-B), the petitioner (a resident of Canada), commenced this proceeding by filing a petition seeking the establishment of an order of paternity and child support. The petition alleged that the parties were engaged in a same-sex relationship between August 1989 and January 1995. During their relationship, the parties made plans to conceive and raise a child together. In December 1993, the petitioner became impregnated via artificial insemination. On September 20, 1994, the petitioner gave birth to a child, Ryan M.
Shortly after the birth of the child, the parties' relationship ended and petitioner, along with the child, moved to Montreal, Canada. Petitioner claims that despite her requests, the respondent has not provided any support for the child. Petitioner seeks a declaration of parentage and an order of child support retroactive to the date of the birth of the child.
On March 6, 2007, the parties appeared before Support Magistrate Rachelle C. Kaufman. Petitioner appeared via telephone, respondent personally and with counsel.
Prior to conducting a hearing, upon oral application by counsel for respondent, the Support Magistrate dismissed the petition, finding that under the facts of the case and the laws of the State of New York, the court could not grant an order of filiation. The question of the appropriate amount of child support was never reached.
Petitioner objects to the order of dismissal, alleging that respondent should be required to provide child support based on the implied promise - equitable estoppel doctrine. At issue is whether the respondent, a legal and biological stranger to a child, can be declared to be a parent and compelled to provide support to the child who is in the custody of his biological mother. It is also noted that both the petitioner and the respondent are women.
The petitioner argues that she relied upon the respondent's promise to support the child when she (petitioner) agreed to become inseminated. Accordingly, petitioner claims that the respondent should not be relieved of any duty of furnishing support for the child as petitioner's [*2]reliance on the respondent's promise has acted to deprive the child of support from a biological father.
On a motion to dismiss, such as was before the Support Magistrate, the allegations of the petition must be deemed to be true, and the petition must be deemed to allege whatever may be implied from its statements by reasonable intendment (Foley v. D'Agostino, 21 AD2d 60). The petitioner is also entitled to every favorable inference that might be drawn (Westhill Exports, Ltd. v. Pope, 12 NY2d 491).
Here, the petition alleges that the parties were engaged in a same-sex relationship for approximately five (5) years and five (5) months, commencing August 1989. During that period, the respondent was attending school to become a chiropractor and petitioner stayed home to care for respondent's children and tend to the home. The parties planned that once the respondent graduated, she would commence work as a chiropractor and the petitioner would return to school to obtain a degree in social work. Within the first year of their relationship, the parties began making plans to conceive a child and explored the options of using known versus unknown sperm donations, as well as various alternative insemination procedures. The parties discussed child rearing issues, including how their children would be raised as siblings, how the children would address each parent and how the children would attend the same schools. After the parties received fertility services from three (3) fertility clinics, and after eleven (11) failed attempts to conceive a child together, in December 1993, the parties laid on the bed they shared together as a couple and the respondent inseminated vials of sperm into the petitioner, resulting in the conception of Ryan M.
During the petitioner's pregnancy, she was accepted into an adult education program and achieved her high school equivalency diploma in June 1994, thereby completing a major step towards achieving the parties' commitments and plans. On September 20, 1994, the subject child was born at the parties' home with the aid of a certified nurse midwife as the parties had planned. The respondent cut the umbilical cord and welcomed the child into the world. For the first three (3) months of the child's life, the respondent nurtured and cared for the child as a parent, however, in January 1995, the respondent ended the parties' relationship. She gave petitioner $1,500, however, as petitioner had no other income or place to live, she and the child moved in with her parents in Montreal, Canada. Petitioner claims that the respondent has failed to honor her commitment to support her while she acquired her social work degree, and has refused to accept financial responsibility for the child.
Petitioner argues that the doctrine of equitable estoppel should be applicable to the facts alleged. Generally, equitable estoppel is a "defensive doctrine preventing one party from taking unfair advantage of another when, through false language or conduct, the person to be estopped had induced another person to act in a certain way, with the result that the other person has been injured in some way" (Black's Law Dictionary 571 [7th ed. 1999]). Once a party makes a prima facie showing of facts sufficient to support equitable estoppel in the context of a paternity proceeding, the opponent of equitable estoppel must demonstrate why estoppel should not be applied in the best interests of the child (see, Matter of Sharon GG. v. Duane HH, 95 AD2d 466, aff'd. 63 NY2d 859).
Initially, this court notes that under controlling law, a former same-sex partner who is neither an adoptive nor biological parent of the subject child has no standing to seek custody or visitation, and cannot rely upon the doctrine of equitable estoppel to establish her status as a de [*3]facto parent of a child to which she was a legal or biological stranger (see, Matter of Behrens v. Rimland, 32 AD3d 929, Matter of Janis C. v. Christine T., 294 AD2d 496 and Matter of Speed v. Robins, 288 AD2d 479, which followed the precedent set in Matter of Alison D. v. Virginia M., 155 AD2d 11, aff'd 77 NY2d 651). However, as far as the obligation of a former same-sex partner to support a child which is neither her biological nor adoptive child, there appears to be scant authority in the State of New York.
In 1985 a proceeding was commenced in the Family Court of Monroe County by the Department of Social Services of Erie County, as assignee of Karin T., seeking support for the benefit of two children (see, Karin T. v. Michael T., 127 Misc 2d 14). The facts of that case and the analysis of Judge Maas provide some guidance. The respondent was a woman who was unhappy with her feminine identity and proceeded to change her name from Marlene to Michael. She and the assignor obtained a marriage license and were married by a minister. Thereafter, two children were born of the assignor by means of artificial insemination.
After the birth of the second child, the parties separated and the respondent moved to Monroe County, New York. At the time of the Monroe County Family Court proceeding, there was pending in the Supreme Court of Erie County an action between Karin T. and the respondent seeking to declare the marriage between the parties null and void.
In his decision, Judge Maas noted that the respondent had executed an agreement indicating that she was the husband of Karin T. and that the children who were to be born by artificial insemination were to be legitimate children and that she waived any right to disclaim the children as her own. Judge Maas held the respondent chargeable with the support of the children. In his decision, he stated:

We, of course, are not here dealing with a separation agreement. But certainly, the document which was signed by the respondent and by which these children were brought into the world gives rise to a situation which must provide these two children with remedies. To hold otherwise would allow this respondent to completely abrogate her responsibilities for the support of the children involved and would allow her to benefit from her own fraudulent acts which induced their birth no more so than if she were indeed the natural father of these children. Of course, the respondent was free to engage and live in any lifestyle which she felt appropriate. However, by her course of conduct in this case which brought into the world two innocent children she should not be allowed to benefit from those acts to the detriment of these children and of the public generally. (Emphasis supplied) Karin T. v. Michael T., 127 Misc 2d 14, 18.
In the pending proceeding, this court is not aware of any written agreement between the parties. Nevertheless, petitioner has alleged an agreement was reached by the parties and the facts which are alleged surely establish an implied agreement. "An agreement may result as a legal inference from the facts and circumstances of the case, although not formally stated in words." Karin T. v. Michael T., 127 Misc 2d 14 at page 17, citing Wells v. Mann, 45 NY 327, 331.
There are other situations where the courts have held individuals responsible for the support of a child even though they were not related to the child by biology or adoption. In Wener v. Wener, 35 AD2d 50, the husband and wife agreed to adopt a child. As a consequence, [*4]the child was removed from its natural mother and began living with the parties. Before the adoption was finalized, the parties separated and a proceeding was brought seeking support from the husband. Although there had been no adoption and there was no legal relationship between the child and the husband, the Appellate Division, Second Department, held the non-parent responsible for the support of the child and stated:

We cannotignore the realities of this infant's plight and blindly apply a rule which was never meant to encompass her situation. This infant was taken from her natural mother when but a few days old, albeit with her mother's consent. Her natural parents and their whereabouts are unknown (no one has ever suggested she be returned to them) and she has never been legally adopted. Still, the parties at bar are the only "parents" she has ever known. Having brought the child into their home, they must, of necessity, shoulder the burden of her support.
However, as between the parties themselves, the primary liability for support properly rests upon the plaintiff. Having agreed to adopt the child and support her, and having treated her as his own prior to the parties' separation, the plaintiff may not now disavow all obligation and shift the entire burden onto the defendant. It may be reasonably inferred from the evidence that the defendant would not have acquired the child and brought her into their home in the absence of the plaintiff's consent to adoption. Therefore, the plaintiff's primary obligation rests upon the dual foundation of an implied contract to support the child and equitable estoppel. Wener v. Wener, 35 AD2d 50, 53.
More recently, the Court of Appeals reaffirmed the principle that under certain circumstances a biological stranger to a child can be declared to be the parent and ordered to pay child support. In the Matter of Shondel J. v. Mark D., 7 NY3d 320, the Court of Appeals found a man to be equitably estopped from denying paternity when he had held himself out as being the father of the child, despite the fact that he was a biological stranger to the child.
In Shondel, the petitioner gave birth in January 1996, to a daughter in Guyana, where she then resided. In a birth registration document she named the respondent, Mark D., as the father. The parties had previously engaged in sexual intercourse while the respondent was visiting Guyana. Respondent, Mark D., was in New York when the child was born, however, in January 1996, he signed a statement declaring that he was "convinced" that he was the child's father and accepted all paternal responsibilities including child support.
In August 2000, Shondel J. commenced a Family Court Act Article 5 proceeding in New York, alleging that the respondent was the father and seeking orders of filiation and support. In October 2000, Mark D. requested DNA testing which revealed that he was not the child's biological father. Despite the results, the Family Court set the matter down for a trial on equitable estoppel in October 2001. After the hearing, the Family Court found that respondent held himself out to be the child's father and behaved in every way as if he was the father. The court, thereupon, entered an order of filiation and awarded child support.
On appeal, the Appellate Division affirmed, concluding that it was in the best interest of the subject child to equitably estop the respondent from denying paternity (6 AD3d 437).
The Court of Appeals affirmed, finding that "[T]he potential damage to a child's psyche caused [*5]by suddenly ending established parental support need only be stated to be appreciated. Cutting off that support, whether emotional or financial (emphasis supplied), may leave the child in a worse position than if support had never been given" (7 NY3d 320, 330). In sum, the Court found that a man who acted like a father would be treated like a father to protect the child's best interest.
In Shondel, the Court of Appeals has stated that even if a party is not related to a child by either biology or adoption, he can be held to be financially responsible for the child. The Court noted that the doctrine of estoppel has been applied by the courts in New York for a long time in both paternity and support proceedings. It stated that the reason for this doctrine applying in these proceedings "has been and continues to be the best interests of the child (Jean Maby H. v. Joseph H., 246 AD2d 282, 285 [2d Dept. 1988]; see generally Matter of L. Pamela P. v. Frank S., 59 NY2d 1, 5 [1983])." (7 NY3d 320, 326). Notably, the Court of Appeals pointed out that the doctrine of equitable estoppel is gender neutral.
By statute, the Legislature has recognized the viability of the doctrine of equitable estoppel applying in paternity proceedings, (see, Family Court Act 418[a] & 532[a]). Those statutes direct the court to not order Genetic Marker on DNA tests if the court finds that it is not in the best interests of the child on the basis of, inter alia, equitable estoppel. Therefore, if the circumstances exist to justify the application of the doctrine of equitable estoppel, no scientific test is ordered and the issue of biology is never even reached. If the issue of biology is not a factor in a paternity proceeding where equitable estoppel is established, it would appear that the gender of the individual against whom the doctrine is applied becomes irrelevant. Consequently, a paternity proceeding could proceed against a same sex partner if circumstances are established justifying the application of equitable estoppel.
At this stage of the proceeding the court must deem the allegations of the petition to be true and must read same in the light most favorable to the petitioner. In this court's view, based upon the facts alleged by the petitioner, it is possible that a court could conclude that the respondent should be estopped to deny her role as a person responsible to provide support for the child. Applying the principles of Shondel, that a "parent" does not necessarily have to have a biological link to the child in order to be liable for child support warrants the denial of respondent's motion to dismiss.
The focus of a court's analysis must be on the child, and the protection of his rights, interests and welfare. The Court of Appeals' decision in Shondel mandates that it is not in the best interests of children for couples to enter into relationships and bring children into the world, only to abandon all responsibility for that child. Although there does not appear to be a bright line rule by which a court can easily determine under what circumstances a non-biological nor adoptive parent will be held responsible for the support of a child, where a petitioner alleges that it was reliance upon the behaviors of a respondent which induced her to bring into the world a child and that as a result of this reliance a child was conceived and that child requires adequate financial support from the respondent, a hearing is required. To automatically relieve an individual of any duty of furnishing support for a child resulting from the artificial insemination of her same-sex partner, to which insemination the same-sex partner submitted in reliance upon certain promises, could be against the best interests of the child as well as cast a financial burden upon the biological parent which in equity and conscience should be shared.
Accordingly, this matter must be scheduled before this court for the purposes of a hearing [*6]to determine if, under the facts of this case, the respondent should be equitably estopped to deny her responsibility to provide support to the subject child. The parties and counsel are directed to appear before this court on October 2, 2007 at 3:00 p.m. for a conference in furtherance of this decision.
The foregoing shall constitute the decision and order of this court.E N T E R
Dated: New City, NY______________________________
September 11, 2007Hon. William P. Warren, J.F.C.

TO:
ROBYN S. CROSSON, ESQ.
PROSKAUER ROSE LLP
Attorneys for Petitioner
1585 Broadway
New York, New York 10036
CAROLYN J. PRZYBYLO, ESQ.
DEWBURY & MONOPOLI, P.C.
Attorneys for Respondent
328 North Broadway
Upper Nyack, New York 10960