14 N.Y.3d 521 (2010)
930 N.E.2d 206
904 N.Y.S.2d 285
In the Matter of H.M., Appellant,
v.
E.T., Respondent.
No. 48
Court of Appeals of New York.
Argued February 17, 2010.
Decided May 4, 2010.
*522 Proskauer Rose LLP, New York City (Peter J.W. Sherwin, Kenneth E. Aldous, Justin F. Heinrich and Nicole Haff of counsel), for appellant.
*523 Nixon Peabody LLP, Rochester (David H. Tennant and Erik A. Goergen of counsel), for respondent.
Orrick, Herrington & Sutcliffe LLP, New York City (Matthew L. Craner, Lisa M. Cirando and Scott Roehm of counsel), for New York County Lawyers' Association, amicus curiae.
Carmelyn P. Malalis, New York City, for New York City Bar Association, amicus curiae.
Chief Judge LIPPMAN and Judges SMITH and PIGOTT concur with Judge CIPARICK; Judge SMITH concurs in a separate concurring opinion; Judge JONES dissents and votes to affirm in another opinion in which Judges GRAFFEO and READ concur.

*524 OPINION OF THE COURT
CIPARICK, J.
This appeal presents the issue whether Family Court has subject matter jurisdiction to adjudicate a support petition brought pursuant to the Uniform Interstate Family Support Act (UIFSA) (Family Ct Act art 5-B) by a biological parent seeking child support from her former same-sex partner. We hold that Family Court possesses subject matter jurisdiction to hear such a petition.
H.M. seeks child support from E.T. According to H.M.'s allegations, which we must take as true for present purposes, the parties were involved in a romantic relationship in New York *525 from 1989 through 1995, and cohabited during much, if not all, of that period. During the first year of their relationship, they planned to conceive and raise a child together, discussing, among other things, available methods of conception, child-rearing practices, and whether the child would be raised as a sibling of E.T.'s children from a prior relationship. In 1993, after many failed attempts, H.M. became pregnant by artificial insemination. E.T. performed the procedure by which H.M. was inseminated.
H.M. gave birth to a son in September 1994. E.T. was present at the delivery and cut the umbilical cord, and the parties shared the expenses associated with the conception and birth of the child. After the child's birth, both parties participated in his care. However, four months after the child was born, E.T. ended the relationship. H.M., a Canadian citizen, moved into her parents' residence in Montreal with the child. An attempted reconciliation in 1997 failed, although E.T. continued to provide H.M. with gifts for the child and monetary contributions for the child's care at unspecified times after the parties' separation.
In 2006, H.M. filed an application in Ontario, Canada, seeking a declaration of parentage and an order of child support establishing monthly payments retroactive to the child's birth. Pursuant to the Uniform Interstate Family Support Act, H.M.'s application was transferred to Family Court, Rockland County.
At an appearance before a Family Court Support Magistrate, E.T. moved to dismiss the petition on jurisdictional grounds. The Support Magistrate dismissed the petition, agreeing with E.T. that no legal basis for jurisdiction existed. H.M. filed written objections to the Support Magistrate's order, and Family Court subsequently reversed the order of dismissal and ordered a hearing to determine whether E.T. should be equitably estopped from denying parentage and support obligations (16 Misc 3d 1136[A], 2007 NY Slip Op 51711[U]).
E.T. appealed. The Appellate Division, with two Justices dissenting, reversed and reinstated the Support Magistrate's order dismissing the petition for lack of subject matter jurisdiction (see Matter of H.M. v E.T., 65 AD3d 119 [2d Dept 2009]).
H.M. appeals as of right pursuant to CPLR 5601 (a) from the Appellate Division order reinstating the Support Magistrate's order of dismissal, and we now reverse.
In 1996, the United States Congress required each state to enact the Uniform Interstate Family Support Act, to ensure *526 uniformity in interstate actions for the establishment, enforcement, and modification of spousal and child support orders (see 42 USC § 666 [f]; Matter of Spencer v Spencer, 10 NY3d 60, 65 [2008]). New York adopted UIFSA in 1997, designating Family Court as our UIFSA "tribunal" (see Family Ct Act § 580-102 ["The family court is the tribunal of this state"]). With respect to the law to be applied by Family Court, UIFSA states that
"[e]xcept as otherwise provided by this article, a responding tribunal of this state:
"(1) shall apply the procedural and substantive law, including the rules on choice of law, generally applicable to similar proceedings originating in this state and may exercise all powers and provide all remedies available in those proceedings; and
"(2) shall determine the duty of support and the amount payable in accordance with the law and support guidelines of this state" (Family Ct Act § 580-303 [emphasis added]).
Article VI of the State Constitution establishes "[t]he family court of the state of New York" (NY Const, art VI, § 13 [a]). We have previously explained that Family Court is a court of limited jurisdiction, constrained to exercise only those powers granted to it by the State Constitution or by statute (see Matter of Johna M.S. v Russell E.S., 10 NY3d 364, 366 [2008]). Thus, in addition to establishing Family Court, the Constitution enumerates the powers thereof. Among the "classes of actions and proceedings" over which the Constitution grants Family Court jurisdiction are proceedings to determine "the support of dependents except for support incidental to actions and proceedings in this state for marital separation, divorce, annulment of marriage or dissolution of marriage" (NY Const, art VI, § 13 [b] [4]). Article 4 of the Family Court Act more specifically defines Family Court's role with respect to support.
Specifically, of particular relevance here, article 4 of the Family Court Act, entitled "Support Proceedings," provides, among other things, that
"the parents of a child under the age of twenty-one years are chargeable with the support of such child and, if possessed of sufficient means or able to earn such means, shall be required to pay for child support a fair and reasonable sum as the court may *527 determine" (Family Ct Act § 413 [1] [a] [emphasis added]).
Family Court indisputably has jurisdiction to determine whether an individual parentregardless of genderis responsible for the support of a child (see Family Ct Act § 413 [1] [a]). Moreover, statutory jurisdictionas Family Court hascarries with it such ancillary jurisdiction as is necessary to fulfill the court's core function (see Higgins v Sharp, 164 NY 4, 8 [1900]; see also Loomis v Loomis, 288 NY 222, 224 [1942]). Thus, because Family Court unquestionably has the subject matter jurisdiction to ascertain the support obligations of a female parent, Family Court also has the inherent authority to ascertain in certain cases whether a female respondent is, in fact, a child's parent.
Article 4 of the Family Court Act establishes the public policy of the State in favor of obligating individuals, regardless of gender, to provide support for their children. The dissent argues that such relief can be afforded only in Supreme Court, a court of original trial jurisdiction. However, as the two dissenting Justices below found, Family Court and Supreme Court have coextensive authorityconcurrent jurisdictionin relation to child support matters. The Domestic Relations Law and the Family Court Act are identical in the establishment of statewide child support guidelines applicable to all child support proceedings, whether brought initially in Family Court or brought in Supreme Court as ancillary to a matrimonial action or custody proceeding. Moreover, under the guidelines adopted in New York as the Child Support Standards Act (L 1989, ch 567), both parents have an obligation to contribute to the economic well-being of their children. The relevant coextensive statutes Family Court Act § 413 and Domestic Relations Law § 240are capable of being enforced in a fashion that does not disadvantage a litigant in Family Court.
In short, because H.M. asserts that E.T. is the child's parent, and is therefore chargeable with the child's support, this case is within the Family Court's article 4 jurisdiction. We have no occasion to decide whether it is also, as the Family Court and the Appellate Division dissent concluded, within that court's article 5 jurisdiction. Nor do we decide the merits of H.M.'s support claim.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the case remitted to the Appellate *528 Division for consideration of questions raised but not determined on the appeal to that court.
SMITH, J. (concurring in Debra H. v Janice R. and Matter of H.M. v E.T.). These two cases present (though neither majority decision ultimately turns on) the question of whether a person other than a biological or adoptive mother or father may be a "parent" under New York law. In Debra H. v Janice R. (14 NY3d 576 [2010] [decided today]), a visitation case, a majority of the Court reaffirms the holding in Matter of Alison D. v Virginia M. (77 NY2d 651 [1991]) that New York parenthood requires a biological or adoptive relationship, though the majority also holdscorrectly in my viewthat we should recognize Debra H.'s parental status under the law of Vermont. In H.M. v E.T., a child support case, the majority holdsagain correctly in my viewthat Family Court has jurisdiction of the case, and does not reach the Alison D. question, while the dissent suggests that Alison D. requires dismissal.
Though I concur with the result in both cases, and join the H.M. v E.T. majority opinion in full, I would depart from Alison D., both for visitation and child support purposes. I grant that there is much to be said for reaffirming Alison D., but I conclude that there is even more to be said against it.
I begin by expressing wholehearted agreement with much of what the Debra H. majority opinion, and Judge Graffeo's concurring opinion, say. It is indeed highly desirable to have "a bright-line rule that promotes certainty in the wake of domestic breakups," and to avoid litigation "over parentage as a prelude to further potential combat over custody and visitation" (Debra H., 14 NY3d at 593, 594 [majority op]). There are few areas of the law where certainty is more important than in the rules governing who a child's parents are. For that reason, I join the Debra H. majority in rejecting the approach taken by the Alison D. dissent, which favored a multi-factor test for parenthood "that protects all relevant interests" (77 NY2d at 662), and by the Wisconsin Supreme Court's decision in In re Custody of H.S.H.-K. (193 Wis 2d 649, 658-659, 533 NW2d 419, 421 [1995]), which permitted a party to establish a "parent-like relationship" by proving four amorphous elements, including such things as "significant responsibility for the child's care, education and development" and "a bonded, dependent relationship" with the child. The Debra H. majority is quite right to see in these vague formulas a *529 recipe for endless litigation, which would mean endless misery for children and adults alike.
These reasons lead the Debra H. majority and the H.M. v E.T. dissent to follow Alison D. in concluding that women in the position of Debra H. (putting aside her civil union with Janice R.) and E.T. are not parents of their former lovers' children. But despite the high value I set on certainty and predictability, I find this result unacceptable. I would therefore adopt a different "bright-line rule"one that includes these women and others similarly situated in the definition of "parent."
The position of Debra H. and E.T. is an increasingly common one. Each lived with her same-sex romantic partner. In each case, while the couple was living together, the partner was artificially inseminated with sperm from an unknown donor (artificial donor insemination, or ADI) and gave birth. Both women in each case expected, and led the other to expect, that both of them would be the child's parents. Yet the Debra H. majority holds that Debra H. would never have become a parent absent the civil union, while the H.M. v E.T. dissent implies that E.T. never became a parent at all. This approach not only disappoints the expectations of the adults involved: much worse, it leaves each child with only one parent, rendering the child, in effect, illegitimate.
To put a large and growing number of our state's children in that status seems wrong to me. Each of these couples made a commitment to bring a child into a two-parent family, and it is unfair to the children to let the commitment go unenforced. Nor can it be said that adoption by the nonbiological parentan option available under Matter of Jacob (86 NY2d 651 [1995])is an adequate recourse, for adoption is possible only by the voluntary act of the adopting parent, with the consent of the biological one. To apply the rule of Alison D. to children situated as are the children in these cases is to permit either member of the couple to make the child illegitimate by her whimas the facts of these two cases illustrate.
I have said that the interest in certainty is extremely strong in this area; but society's interest in assuring, to the extent possible, that each child begins life with two parents is not less so. That policy underlies the common-law presumption of legitimacy, "one of the strongest and most persuasive known to the law" (Matter of Findlay, 253 NY 1, 7 [1930, Cardozo, Ch. J.]; see also Michael H. v Gerald D., 491 US 110, 125 [1989] [the *530 strength of the presumption derives from "an aversion to declaring children illegitimate . . . thereby depriving them of rights of inheritance and succession . . . and likely making them wards of the state"]). The policy has been adopted as a matter of statute in particular circumstances (Domestic Relations Law §§ 24, 73) and, in one persuasively reasoned Appellate Division case, has been adapted as a matter of common law to protect children born by ADI (Laura WW. v Peter WW., 51 AD3d 211 [3d Dept 2008]). I would apply the common-law presumption to the facts of these cases, and would hold that where a child is conceived through ADI by one member of a same-sex couple living together, with the knowledge and consent of the other, the child is as a matter of lawat least in the absence of extraordinary circumstancesthe child of both.
The rule I propose is clearly defined in at least one respect: It would apply only to same-sex couplesindeed, only to lesbian couples, because I would leave for another day the question of what rules govern male couples, for whom ADI is not possible. This limitation may give some pause, for it seems intuitively that all people, male and female, gay and straight, should be treated the same way. Yet it is an inescapable fact that gay and straight couples face different situations, both as a matter of law and as a matter of biology. By the choice of our Legislature, a choice we have held constitutionally permissible (Hernandez v Robles, 7 NY3d 338 [2006]), same-sex couples in New York have neither marriage nor domestic civil unions available to them. And, pending even more astounding technological developments than we have yet witnessed, it is not possible for both members of a same-sex couple to become biological parents of the same child. These differences seem to me to warrant different treatment. Indeed, different treatment already exists, for both a statute (Domestic Relations Law § 73) and the common law (Laura WW., 51 AD3d at 217) give a measure of protection to the children of married opposite-sex couples who are conceived by ADI. The rule I propose would give the children of lesbian couples similar, though not identical, protection.
In one respect, the rule I have suggested would come closer to treating gay and straight couples alike than the more flexible rules advocated or adopted in many writings, including the Alison D. dissent, the Wisconsin decision in In re Custody of H.S.H.-K., and Judge Ciparick's concurrence today in Debra H. (14 NY3d at 606-607). Under these approaches, the same-sex partners of biological parents would *531 have an opportunity to become quasi-parents"de facto parents," parents-by-estoppel, or persons "in a parent-like relationship." As to women in the situation of Debra H. and E.T., I would drop all the hyphens and quotation marks, and call them simply parents.
For these reasons, I would hold that Debra H. is M.R.'s parent, and that E.T. is the parent of H.M.'s biological son. Therefore, in Debra H. v Janice R., I would not find it necessary to reach the effect of the Vermont civil union (although, since the majority does reach it, I join in its resolution of that question); and I would hold that Family Court has jurisdiction in H.M. v E.T. not only on the narrow ground adopted by the majority, but also on the ground that E.T. is the child's parent and therefore "chargeable with the support of such child" within the meaning of Family Court Act § 413 (1) (a).
JONES, J. (dissenting).
In this support petition brought under the Uniform Interstate Family Support Act (UIFSA) (Family Ct Act art 5-B), H.M., the biological parent of a child born in September 1994, seeks to charge E.T., her former same-sex partner, with the financial responsibility for the support of the child who was planned, conceived and born during the couple's relationship, but who never had any continuing relationship with E.T., who ended the relationship with H.M. when the child was three months old. Because Family Court lacks subject matter jurisdiction to hear such a petition, I respectfully dissent and would affirm the order of the Appellate Division.
It is well settled that "Family Court is a court of limited jurisdiction that cannot exercise powers beyond those granted to it by statute" (Matter of Johna M.S. v Russell E.S., 10 NY3d 364, 366 [2008]; see Matter of Pearson v Pearson, 69 NY2d 919, 921 [1987]; Matter of Silver v Silver, 36 NY2d 324, 326 [1975]; Family Ct Act § 115) or the State Constitution (see NY Const, art VI, § 13). In addition, Family Court has no general equity jurisdiction; as such, it cannot grant equitable relief (see Matter of Brescia v Fitts, 56 NY2d 132, 139 [1982]).
H.M. brought her petition pursuant to UIFSA and sought a declaration of "parentage," a proceeding authorized by UIFSA. Family Court received the petition and is the "responding tribunal" under UIFSA, which states, "a responding tribunal of this state . . . shall apply the procedural and substantive law. . . generally applicable to similar proceedings originating in this state and may exercise all powers and provide all remedies *532 available in those proceedings" (Family Ct Act § 580-303 [1]). This rule is applicable to proceedings for the determination of parentage under UIFSA (see Family Ct Act § 580-701 [b]). As such, UIFSA does not supplant or otherwise make changes in the procedural and substantive law of New York.
Under the clear and unambiguous language of the Family Court Actthe statute defining the powers of Family Courtthe only proceeding "similar" to a proceeding for the determination of "parentage" is the "Paternity Proceeding[]" under article 5, which provides a vehicle for determining whether a male is the father of a particular child. The majority argues, though, that Family Court has authority under Family Court Act article 4 to hear H.M.'s support petition. I disagree.
Family Court Act § 413 (1) (a) provides:
"the parents of a child under the age of twenty-one years are chargeable with the support of such child and, if possessed of sufficient means or able to earn such means, shall be required to pay for child support a fair and reasonable sum as the court may determine. The court shall make its award for child support pursuant to the provisions of this subdivision" (emphasis added).
Although the term "parent" is not defined in the Family Court Act, that term has been defined as follows:
"The lawful father or mother of someone. In ordinary usage, the term denotes more than responsibility for conception and birth. The term commonly includes (1) either the natural father or the natural mother of a child, (2) either the adoptive father or the adoptive mother of a child, (3) a child's putative blood parent who has expressly acknowledged paternity, and (4) an individual or agency whose status as guardian has been established by judicial decree" (Black's Law Dictionary 1222 [9th ed 2009] [emphasis added]).
In addition, one may gain the status of a legal parent through second-parent adoption (see Matter of Jacob, 86 NY2d 651 [1995]) or by entering a civil union or same-sex marriage in a state with laws providing that participants of such unions have parental rights with respect to children either member or spouse becomes the natural parent of during the course of the union.
To be sure, Family Court may charge both men and women with support obligations based on a biological or adoptive or *533 "guardianship by judicial decree" or other legal "parental" connection to a child. Charging support obligations to one with such a legal relationship to a child is clearly within Family Court's jurisdiction under article 4.
Here, however, H.M. seeks child support from a woman with no biological or other legal connection to the child.[1] Accordingly, Family Court has no legal authority to address H.M.'s petition under Family Court Act article 4. In order for Family Court to find that support obligations are chargeable to E.T. under article 4, it would have to grant H.M. the type of equitable relief that is beyond its jurisdiction.
My analysis is consistent with the holding in Matter of Shondel J. v Mark D. (7 NY3d 320, 328 [2006] [respondent was equitably estopped from denying paternity of petitioner mother's childfor support purposesbecause respondent "represented that he was the father of the child, and (the child) justifiably relied on this representation, changing her position by forming a bond with him"]). Shondel J. makes clear that the doctrine of equitable estoppel is applicable, in the child support context, only to preclude a party's reliance on genetic marker and DNA testing to prove or disprove paternity when such an approach is warranted to prevent disruption of an ongoing parent/child relationship (see Family Ct Act § 418 [a]; § 532 [a]; see e.g. Shondel J., supra).[2] Put differently, Family Court may apply the doctrine of equitable estoppel only in the stated limited circumstances as a means of granting relief it is statutorily authorized to grant.
Finally, I note that, although Supreme Court would have jurisdiction over H.M.'s equitable claim, that court is also without authority to declare E.T. the child's parent on the basis of equitable estoppel. This is true in the visitation and custody context (see Debra H. v Janice R., 14 NY3d 576 [2010] [decided today]) as well as the child support arena where the standard for determining who constitutes a support parent is no different than the rule applied in Family Court.
*534 In reversing the Appellate Division's order, the majority relies on an overly broad reading of Family Court Act article 4 that is inconsistent with the Family Court's limited subject matter jurisdiction and lack of equity jurisdiction. Further, the position taken by the majority here is inconsistent with this Court's holding today in Debra H. (supra), which reaffirmed that Matter of Alison D. v Virginia M. (77 NY2d 651 [1991] [Held that only a child's biological or adoptive parent has standing to seek visitation against the wishes of a fit custodial parent. Stated differently, a known stranger to a childi.e., one with no biological, adoptive or other legal relationshipcannot assert that he/she is a parent for visitation purposes]) is still good law.
For the foregoing reasons, I dissent and would affirm the order of the Appellate Division.
Order reversed, etc.
NOTES
[1] Specifically, H.M. asserts that E.T. is, or is estopped from denying that she is, the child's "parent," and is therefore chargeable with the child's support.
[2] In this case, there is no allegation that, believing E.T. to be a biological parent (or, for that matter, a parent by virtue of adoption or a civil union), the child established a parent/child bond that would be upset if E.T. were allowed to rely on DNA tests to show that she is not a parent, nor in any event could the preclusion of genetic marker or DNA tests result in a holding that E.T. is a support parent.