OPINION OF THE COURT
Bernice D. Siegal, J.
It is hereby ordered that the motion is resolved as follows:
*228 Defendants move for an order dismissing plaintiffs’ verified complaint, with prejudice, pursuant to CPLR 3211 (a) (7) and RPAPL article 5.
Facts
The disputed area is located on a 3 foot by 100 foot track between 407 Beach 124th Street, Rockaway Park and 408 Beach 124th Street, Rockaway Park (hereinafter the disputed area). As factual background, lots 407 Beach 124th Street, Rockaway Park, New York (407) and 408 Beach 124th Street, Rockaway Park, New York (408) have been in the plaintiffs’ family since 1942 and 1949, respectively. 407 and 408 are adjoined properties such that 407 shares its eastern side with 408’s western side.
On June 11, 1946, Matthew Giannasca, plaintiffs’ father, and Ettore Giannasca, plaintiffs’ grandfather, purchased title to 408. By deed dated June 21, 1949, between Ettore and Matthew, Matthew acquired sole title to 408. On May 15, 1973, Rosemary Giannasca, plaintiffs’ mother, acquired title to 408. On June 7, 2005, Matthew and Rosemary, as cotrustees of the Matthew W. Giannasca Revocable Trust, created by trust agreement, acquired title to 408. Plaintiffs acquired title to the property as joint tenants with rights of survivorship by deed on August 22, 2008.
Ettore owned 407 on October 30, 1942. Upon his death in 1956, title to 407 was acquired by plaintiffs’ grandmother Alice Giannasca. Upon the death of Alice in 1976, title was acquired by Matthew and Rosemary on January 25, 1977. By deed dated November 1, 1977, Butler Street Corporation acquired title to 407. Said corporation was a private corporation owned entirely by Matthew, Rosemary and the plaintiffs. On October 10, 2008, the property known as 407 was acquired by the defendants from the plaintiffs.
Plaintiffs contend that in 1962 their father, the owner of 408, adversely possessed the 3-by- 100-foot track of land from their grandmother and grandfather, the previous owners of 407. Plaintiffs argue that in 1952 their father planted hedges and bushes and erected a shed and gate in the disputed area. During the statutory period,* 408 was owned by plaintiffs’ grandfather in 1942 and was passed to their grandmother upon his death in *229 1956. From 1962 to 2008, both properties transferred ownership among plaintiffs’ family. It is important to note that on January 25, 1977, plaintiffs’ father and mother owned both properties. However, on October 10, 2008, defendants purchased 407 from plaintiffs. Defendants assert that they own the disputed area as a survey of 407 includes the area in question. However, plaintiffs assert that they now own the shed, gate, bushes, and hedges as part of their land through their father’s adverse possession and title to this portion of land was not transferred to defendants upon the sale of 407.
Defendants’ motion for an order dismissing plaintiffs’ verified complaint, with prejudice, pursuant to CPLR 3211 (a) (7) and RPAPL article 5 is granted as more fully set forth below.
Discussion
“In considering a motion to dismiss for failure to state a cause of action pursuant to CPLR 3211 (a) (7), a court should ‘accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory.’ ” (T.V. v New York State Dept. of Health, 88 AD3d 290, 306 [2d Dept, Aug. 9, 2011], quoting Leon v Martinez, 84 NY2d 83, 87-88 [1994].)
“Such a motion should be granted only where, even viewing the allegations as true, the plaintiff still cannot establish a cause of action.” (Parsippany Constr. Co., Inc. v Clark Patterson Assoc., P.C., 41 AD3d 805, 806 [2d Dept 2007].)
The court notes that the crux of plaintiffs’ complaint is based on adverse possession. Plaintiffs assert that their father adversely possessed the disputed property from their grandmother and grandfather; however, the court must reject this contention based upon the lack of specific proof of hostility. Plaintiffs’ father may have possessed the land by cultivating and improving upon it and/or put a reasonable diligent owner on notice from 1952 to 1962. (Birnbaum v Brody, 156 AD2d 408 [2d Dept 1989].) An adverse claimant must establish by clear and convincing evidence that possession of the property was “(1) hostile and under claim of right; (2) actual; (3) open and notorious; (4) exclusive; and (5) continuous for the required period.” (Bratone v Conforti-Brown, 79 AD3d 955, 957 [2d Dept 2010].) However, with regards to the other elements of adverse possession, there is an added burden of proof for hostility when *230 the parties to the adverse possession are related by blood. (Turner v Baisley, 197 AD2d 681, 682 [2d Dept 1993].)
“Here, the plaintiffs have failed to allege, except in a conclusory fashion, that the use of the parcel was hostile. While it is true that the element of ‘hostile use’ under a claim of right may be presumed if the other elements have been proven (see, City of Tonawanda v Ellicott Cr. Homeowners Assn., 86 AD2d 118, 121), ‘where it is shown that the user and the landowner are related by blood . . . the proponent is not accorded the benefit of the presumption’, and the onus remains on the proponent to come forward with evidence of hostile use sufficient to raise a triable issue of fact (Wechsler v New York State Dept. of Envtl. Conservation, 193 AD2d 856, 860; cf., Hassinger v Kline, 91 AD2d 988, 989).” (Turner v Baisley, 197 AD2d 681, 682 [1993].)
Identically, in the present case, plaintiffs have failed to assert any direct evidence of hostility because they relied upon the assumption of hostility. As noted in the prior motion plaintiffs have failed to satisfy the added burden of proof required because of the familial ties. Additionally, all parties to the original adverse possession are now deceased, which is likely why plaintiffs have not set forth any direct evidence of hostility. Accordingly, plaintiffs have failed to assert a claim for adverse possession against the defendants.
It may also be noted that plaintiffs’ father may have divested the plaintiffs’ rights to claim adverse possession. On January 25, 1977, plaintiffs’ father owned both 407 and 408. Assuming that the court acknowledged the adverse possession of the disputed area in 1962, the future sole ownership of both lands would extinguish any present claim of adverse possession. Adverse possession is reserved as a remedy to procure title to land. (Walling v Przybylo, 7 NY3d 228, 233 [2006].) However, if title has already vested with plaintiffs’ father after the alleged adverse possession, then the adverse possession becomes irrelevant to the ownership of the land; the plaintiffs’ father would have no means of acquiring title through adverse possession from 1962 after 1977 because he already had title to the disputed area.
Furthermore, even if the court were to agree with plaintiffs’ position, that adversity of title existed for the requisite period of time, RPAPL 543 provides that “the existence of de minimus [síc] non-structural encroachments including, but not limited *231 to, fences, hedges, shrubbery, plantings, sheds and nonstructural walls” as well as “the acts of lawn mowing or similar maintenance across the boundary line of an adjoining landowner’s property shall be deemed permissive and non-adverse.” Shrubbery, bushes, shed and fences, as alleged by the plaintiffs herein, are deemed permissive and nonadverse. (See Hartman v Goldman, 84 AD3d 734, 736 [2d Dept 2011]; see also Sawyer v Prusky, 71 AD3d 1325, 1327-1328 [3d Dept 2010].)
For the reasons set forth above, defendants’ motion for an order dismissing plaintiffs’ verified complaint, with prejudice, pursuant to CPLR 3211 (a) (7) and RPAPL article 5 is hereby granted.

 A party seeking to obtain title by adverse possession must prove by clear and convincing evidence that the possession was continuous for the statutory period of 10 years. (Skyview Motel, LLC v Wald, 82 AD3d 1081 [2d Dept, Mar. 22, 2011].)